UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| Stephanie Schultz, Kevin Plummer, and Chad Huffer, as representatives of a class of similarly situated persons, and on behalf of the Aerotech, Inc. Employee Stock Ownership Plan and Trust,<br><br>   Plaintiffs,<br><br>  v.<br><br>Aerotech, Inc. and the Aerotech, Inc. Employee Stock Ownership Plan and Trust Committee,<br><br>   Defendants. | Case No. 2:24-cv-00618<br><br>**CLASS ACTION COMPLAINT** |

## NATURE OF THE ACTION

1.      Plaintiffs Stephanie Schultz, Kevin Plummer, and Chad Huffer ("Plaintiffs"), as representatives of the Class described herein, and on behalf of the Aerotech, Inc. Employee Stock Ownership Plan and Trust (the "ESOP" or "Plan"), bring this action pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), against Aerotech, Inc. ("Aerotech") and the Aerotech, Inc. Employee Stock Ownership Plan and Trust Committee (the "ESOT Committee") (collectively, "Defendants"). This case is about Defendants' failure to invest the non-employer stock assets of the ESOP prudently and for the exclusive benefit of ESOP participants. The foregoing violated Defendants' fiduciary duties under ERISA, 29 U.S.C. §§ 1104(a)(1) and 1106(a).

## PARTIES

2.      The ESOP is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A); a "defined contribution plan" as defined by 29 U.S.C. § 1002(34) (also known as an "individual account plan"); and an "employee stock ownership plan" as defined by 29 U.S.C. § 1007(d)(6). The ESOP is sponsored by Aerotech for the benefit of its employees.

3.      Plaintiff Stephanie Schultz is a natural person and a resident of West Mifflin, PA. She is a former participant in the ESOP. She worked for Aerotech between 2016 and 2019. Her ESOP benefit was determined by the value of the ESOP's assets in her account at the time she received her distribution. Her benefit would have been greater if not for Defendants' violations of ERISA.

4.      Plaintiff Kevin Plummer is a natural person and a resident of West Leechburg, PA. He is a current participant in the ESOP. He worked for Aerotech between 2012 and 2023. His ESOP benefit is determined by the value of the ESOP's assets in his account. His ESOP

1

account would be worth more today if not for Defendants' violations of ERISA. His future ESOP account growth will be impaired if Defendants are not enjoined from further mismanagement.

5. Plaintiff Chad Huffer is a natural person and a resident of Woodstock, GA. He is a former participant in the ESOP. He worked for Aerotech between 2008 and 2020. His ESOP benefit was determined by the value of the ESOP's assets in his account at the time he received his distribution. His benefit would have been greater if not for Defendants' violations of ERISA.

6. Defendant ESOT Committee is the ESOP's governing committee established by the written terms of the ESOP. The ESOT Committee directs the ESOP's trustee with respect to how to invest ESOP assets. Accordingly, Defendant ESOT Committee is a fiduciary of the ESOP pursuant to 29 U.S.C. § 1002(21)(A)(i).

7. Defendant Aerotech is the sponsor of the Plan. Acting through its Board of Directors, Aerotech appoints and has the power to remove members of the ESOT Committee. As a result of its authority to appoint and remove fiduciaries of the ESOP, Aerotech is itself a fiduciary pursuant to 29 U.S.C. § 1002(21)(A)(i),(iii).

## JURISDICTION AND VENUE

8. Plaintiffs bring this action pursuant to 29 U.S.C. §§ 1132(a)(2) and (3), which provide that a participant in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and obtain monetary and appropriate equitable relief.

9. This case presents a federal question under ERISA and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

10. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because Defendants' violations of ERISA occurred in Pittsburgh, PA, where Aerotech is located and where the ESOP is administered.

## DEFENDANTS' ACTIONS AND OMISSIONS WITH RESPECT TO THE ESOP'S OTHER INVESTMENTS ACCOUNT

11. Aerotech established the ESOP in 1977 to provide retirement benefits to employees. There are around 450 current participants in the ESOP. The ESOP averaged around 385 participants during the subject period.[1]

12. The ESOP owns a minority interest in Aerotech.

13. Each participant's ESOP benefit is determined by the value of the assets in their individual account.

14. The ESOP has two types of assets: Aerotech stock and other investments. The other investments are known as the "Other Investments Account" ("OIA").

15. Each participant's account value is equal to their *pro rata* share of the ESOP's total asset value.

16. Participants are credited with a share of company contributions and Aerotech stock while employed by Aerotech. Participant credits are then adjusted over time by investment gains, losses, and income received by the ESOP on its Aerotech stock and OIA investments.

17. Between June 30, 2018 and June 30, 2023,[2] the ESOP averaged around $10.4 million in the OIA. As of June 30, 2023, the OIA balance was over $12 million. The OIA balance has grown over time through the accumulation of Aerotech stock dividends and contributions from the company.

18. OIA investment earnings between June 30, 2018 and June 30, 2023 were negligible. The ESOP earned $778,539 on OIA investments at an average annual rate of 1.46%.

---

[1] ERISA claims cover six years from the date of filing. *See* 29 U.S.C. § 1113(1).
[2] The ESOP files annual financial statements with the Department of Labor (DOL). The statement concerning the ESOP's financial condition as of June 30, 2023 is its most recently filed report. The next report concerning the period July 1, 2023 to June 30, 2024 is expected in late 2024.

19. Participants have no control over the investment of the OIA and rely on Defendants to prudently invest the OIA funds for the purpose of increasing the value of their individual accounts.

20. Because employee stock plans such as the ESOP invest primarily or exclusively in a single security, they have an aggressive risk tolerance, with the primary investment objective being long-term capital appreciation.

21. Long-term capital appreciation is generally the objective of retirement investments. The Department of Labor, which oversees employee retirement plans, has instructed that "investments made on behalf of . . . participants ought to and often will be long-term investments," warning that overallocation to capital preservation strategies will "decreas[e] the likelihood that participants . . . have adequate retirement savings."[3]

22. The ESOP is no less focused on the long term than the typical retirement plan. Aerotech considers the ESOP to be a retirement benefit—indeed, the company refrains from matching contributions to employees' 401(k) accounts because it directs contributions to the ESOP instead. Participants cannot spend their ESOP account balances prior to retirement without incurring IRS penalties (except in uncommon cases of disability or another qualifying hardship). Moreover, Aerotech employees are relatively young on average, with a high proportion of workers who are 30 years or more from retirement.

23. Notwithstanding Plan participants' long-term investment objective, the ESOT Committee has kept the OIA invested exclusively in cash equivalents, namely money market accounts and short-term certificates of deposit.

---

[3] 72 Fed. Reg. 60452, 60463.

24. The ESOT Committee's investment of the OIA is unusual and imprudent. Cash equivalents are appropriate only if the investor has a short-term investment objective, needs to preserve their principal balance, and cannot tolerate market risk. These investments are not designed or expected to provide competitive long-term growth needed by retirement plan participants such as Plaintiffs and the Class.

25. A prudent fiduciary would have been aware of these facts. In the 30-year period between 1988 and 2017 (the last full calendar year before the beginning of the subject period), the ICE BofA 3-month Treasury Bill index—the index used most often to benchmark money market fund performance—averaged returns of 3.32% per year. During that same period, the Federal Reserve's index of 3-month Certificates of Deposit averaged a 3.47% rate of return.[4] A $10,000 investment earning these rates of return would be worth $26,639 and $27,824, respectively, after 30 years. Considering inflation averaged 2.56% per year, cash investments did little more than hold their value.

26. In contrast, the S&P 500—the index used most often to measure large company domestic stocks—averaged a 10.70% rate of return between 1988 and 2017. The Russell 2000—the index most often used to measure small company domestic stocks—averaged a 10.46% rate of return. A $10,000 investment earning these rates of return in 1988 would be worth $211,071 and $197,766, respectively, after 30 years. Stock investments beat inflation by a substantial degree and provide real capital appreciation to investors.

27. Broader historical trends are the same. For 150 years in advanced economies throughout the world, "safe" investments in cash equivalents have beat inflation by around 1%

---

[4] https://fred.stlouisfed.org/series/IR3TCD01USM156N

per year on average, while stocks have outpaced inflation by around 7% per year.[5] As illustrated above, the difference over the length of a career is measured in the hundreds of thousands of dollars, even assuming a relatively small principal balance of $10,000.

28. The average OIA participant balance during the subject period was around $28,000. A 6% average annual return differential between cash and stocks over next 30 years will produce a retirement savings deficit of between $175,000 to $400,000 for an ESOP participant with a $28,000 OIA balance today.[6]

29. Monitoring recent market data also would have shown the ESOT Committee that cash equivalents earn significantly less over the long term, even when valued during declines in other asset classes.

30. The illustration below ranks the 10-year average annual returns of stocks, bonds, and cash equivalents, as well as their calendar year returns. An investor over any 10-year period shown would have been substantially better off invested stocks and other asset classes than cash equivalents, even if the investor was required to withdraw their balance at a low point for other asset classes.

---

[5] *See* Oscar Jorda, *et al.* "The Rate of Return on Everything, 1870-2014." The Quarterly Journal of Economics (2019), 1225-1298, at 1228-30, 1241, 1280-81.

[6] This calculation is based on the DOL's model for quantifying retirement savings losses. *See* Department of Labor, "A Look at 401(k) Plan Fees," at 2 (Sept. 2019), *available at* https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited April 24, 2024). The model assumes no additional contributions are made. In Plaintiffs' adaptation of the DOL model, the high estimated loss of $397,768 is based on an assumed annual rate of return of 10% on stocks and 4% on cash equivalents. The low estimated loss of $175,403 is based on an assumed annual rate of return of 7% on stocks and 1% on cash equivalents.

*10-Year Average Annual Returns and Calendar Year Returns Ranked, 2018-2023*[7]

|  | 2018 | | 2019 | | 2020 | | 2021 | | 2022 | | 2023 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Large Cap Stocks** | 10-Year Avg. | 13.12% | 10-Year Avg. | 13.56% | 10-Year Avg. | 13.88% | 10-Year Avg. | 16.55% | 10-Year Avg. | 12.56% | 10-Year Avg. | 12.03% |
|  | 10-Year Rank | 1st | 10-Year Rank | 1st | 10-Year Rank | 1st | 10-Year Rank | 1st | 10-Year Rank | 1st | 10-Year Rank | 1st |
|  | Calendar Year | -4.38% | Calendar Year | 31.49% | Calendar Year | 18.40% | Calendar Year | 28.71% | Calendar Year | -18.11% | Calendar Year | 26.29% |
|  | Calendar Rank | 5th | Calendar Rank | 1st | Calendar Rank | 2nd | Calendar Rank | 1st | Calendar Rank | 6th | Calendar Rank | 1st |
| **Small Cap Stocks** | 10-Year Avg. | 11.97% | 10-Year Avg. | 11.83% | 10-Year Avg. | 11.20% | 10-Year Avg. | 13.23% | 10-Year Avg. | 9.01% | 10-Year Avg. | 7.16% |
|  | 10-Year Rank | 2nd | 10-Year Rank | 2nd | 10-Year Rank | 2nd | 10-Year Rank | 2nd | 10-Year Rank | 2nd | 10-Year Rank | 2nd |
|  | Calendar Year | -11.01% | Calendar Year | 25.52% | Calendar Year | 19.96% | Calendar Year | 14.82% | Calendar Year | -20.44% | Calendar Year | 16.93% |
|  | Calendar Rank | 7th | Calendar Rank | 2nd | Calendar Rank | 1st | Calendar Rank | 2nd | Calendar Rank | 7th | Calendar Rank | 3rd |
| **High Yield Bonds** | 10-Year Avg. | 11.12% | 10-Year Avg. | 7.57% | 10-Year Avg. | 6.80% | 10-Year Avg. | 6.83% | 10-Year Avg. | 4.03% | 10-Year Avg. | 4.60% |
|  | 10-Year Rank | 3rd | 10-Year Rank | 4th | 10-Year Rank | 4th | 10-Year Rank | 4th | 10-Year Rank | 4th | 10-Year Rank | 3rd |
|  | Calendar Year | -2.08% | Calendar Year | 14.32% | Calendar Year | 7.11% | Calendar Year | 5.28% | Calendar Year | -11.19% | Calendar Year | 13.45% |
|  | Calendar Rank | 4th | Calendar Rank | 5th | Calendar Rank | 5th | Calendar Rank | 4th | Calendar Rank | 4th | Calendar Rank | 4th |
| **Long-Term Bonds** | 10-Year Avg. | 7.40% | 10-Year Avg. | 7.99% | 10-Year Avg. | 8.24% | 10-Year Avg. | 6.42% | 10-Year Avg. | 2.13% | 10-Year Avg. | 3.88% |
|  | 10-Year Rank | 4th | 10-Year Rank | 3rd | 10-Year Rank | 3rd | 10-Year Rank | 5th | 10-Year Rank | 5th | 10-Year Rank | 5th |
|  | Calendar Year | -6.76% | Calendar Year | 23.36% | Calendar Year | 13.32% | Calendar Year | -1.18% | Calendar Year | -25.29% | Calendar Year | 10.73% |
|  | Calendar Rank | 6th | Calendar Rank | 3rd | Calendar Rank | 3rd | Calendar Rank | 8th | Calendar Rank | 8th | Calendar Rank | 5th |
| **International Stocks** | 10-Year Avg. | 6.24% | 10-Year Avg. | 5.32% | 10-Year Avg. | 5.19% | 10-Year Avg. | 7.84% | 10-Year Avg. | 4.59% | 10-Year Avg. | 4.32% |
|  | 10-Year Rank | 5th | 10-Year Rank | 5th | 10-Year Rank | 5th | 10-Year Rank | 3rd | 10-Year Rank | 3rd | 10-Year Rank | 4th |
|  | Calendar Year | -14.09% | Calendar Year | 22.49% | Calendar Year | 7.59% | Calendar Year | 12.62% | Calendar Year | -14.29% | Calendar Year | 17.94% |
|  | Calendar Rank | 8th | Calendar Rank | 4th | Calendar Rank | 5th | Calendar Rank | 3rd | Calendar Rank | 5th | Calendar Rank | 2nd |
| **Intermediate-Term Bonds** | 10-Year Avg. | 4.84% | 10-Year Avg. | 4.25% | 10-Year Avg. | 4.18% | 10-Year Avg. | 3.53% | 10-Year Avg. | 1.75% | 10-Year Avg. | 2.46% |
|  | 10-Year Rank | 6th | 10-Year Rank | 6th | 10-Year Rank | 6th | 10-Year Rank | 6th | 10-Year Rank | 6th | 10-Year Rank | 6th |
|  | Calendar Year | 0.01% | Calendar Year | 9.52% | Calendar Year | 7.08% | Calendar Year | -1.03% | Calendar Year | -9.10% | Calendar Year | 6.94% |
|  | Calendar Rank | 3rd | Calendar Rank | 6th | Calendar Rank | 6th | Calendar Rank | 7th | Calendar Rank | 3rd | Calendar Rank | 6th |
| **Short-Term Bonds** | 10-Year Avg. | 1.52% | 10-Year Avg. | 1.54% | 10-Year Avg. | 1.60% | 10-Year Avg. | 1.39% | 10-Year Avg. | 0.88% | 10-Year Avg. | 1.27% |
|  | 10-Year Rank | 7th | 10-Year Rank | 7th | 10-Year Rank | 7th | 10-Year Rank | 7th | 10-Year Rank | 7th | 10-Year Rank | 7th |
|  | Calendar Year | 1.60% | Calendar Year | 4.03% | Calendar Year | 3.33% | Calendar Year | -0.47% | Calendar Year | -3.69% | Calendar Year | 4.61% |
|  | Calendar Rank | 2nd | Calendar Rank | 7th | Calendar Rank | 7th | Calendar Rank | 6th | Calendar Rank | 2nd | Calendar Rank | 7th |
| **Cash Equivalents** | 10-Year Avg. | 0.37% | 10-Year Avg. | 0.58% | 10-Year Avg. | 0.64% | 10-Year Avg. | 0.63% | 10-Year Avg. | 0.76% | 10-Year Avg. | 1.25% |
|  | 10-Year Rank | 8th | 10-Year Rank | 8th | 10-Year Rank | 8th | 10-Year Rank | 8th | 10-Year Rank | 8th | 10-Year Rank | 8th |
|  | Calendar Year | 1.87% | Calendar Year | 2.28% | Calendar Year | 0.67% | Calendar Year | 0.05% | Calendar Year | 1.46% | Calendar Year | 5.01% |
|  | Calendar Rank | 1st | Calendar Rank | 8th | Calendar Rank | 8th | Calendar Rank | 5th | Calendar Rank | 1st | Calendar Rank | 8th |

31.   No prudent fiduciary shopping from this menu during the subject period would invest 100% of their portfolio in cash equivalents for the long term.

32.   Notwithstanding, the ESOT Committee has kept the OIA invested exclusively in in cash equivalents since at least 2009.[8] Aerotech's board has either failed to monitor the ESOT Committee or worse—the board sanctions the ESOT Committee's imprudent approach.

---

[7] Asset classes are represented by the following indexes: Large Cap Stocks—S&P 500; Small Cap Stocks—Russell 2000; High Yield Bonds—Bbg US Corp High Yield; International Stocks—MSCI World Ex US; Long-Term Bonds—Bbg US Long Credit; Intermediate-Term Bonds—Bbg US Interm Credit; Short-Term Bonds—Bbg US Gov/Credit 1-3Y; Cash Equivalents--ICE BofA US 3M Trsy Bill.

[8] The DOL provides on-demand access to full annual financial reports back to 2009.

7

33. Investments in each major asset class were generally available to Defendants throughout the subject period. Defendants could have invested OIA funds in each asset class by selecting a passively managed fund that tracks the corresponding index. Defendants also could have selected an actively managed fund that seeks out the best individual securities within the asset class.

34. Since mid-2018, the ESOP has lost millions in earnings due to Defendants' failure to prudently invest OIA funds. Between June 30, 2018 and June 30, 2023, the OIA earned $778,539 from its investments. Had Defendants invested the OIA in an index fund tracking the S&P 500 over the same period, the Plan would have earned around $7.7 million. Defendants' fiduciary neglect cost ESOP participants $6.9 million during this period, or more than $17,000 per participant.[9]

35. Prudent ESOP fiduciaries acting under similar circumstances do not sideline funds exclusively in cash equivalents, as Defendants have done. One strategy is to allow participants to direct their "other investments" balances to pooled funds that offer exposure to stocks and other asset classes. This is accomplished by offering such pooled funds within the ESOP or by allowing participants to move balances to the company's 401(k) plan. Either approach would be appropriate for Aerotech, as the company considers its ESOP contributions to be a replacement for 401(k) matching contributions.

36. Even where the ESOP fiduciary retains sole investment control and the plan does not allow ESOP-to-401(k) transfers, Defendants' conduct is not the norm. When ESOPs

---

[9] The per participant calculation is based on the ESOP's average number of participants with account balances during the period, 385. Since June 30, 2023, stocks have further outpaced cash equivalents (as of April 22, 2024); assuming Defendants have continued to hold cash equivalents since the ESOP's latest annual report, the loss ESOP's loss has surpassed $6.9 million, and will likely continue to grow over the long term.

accumulate excess fund not invested in employer stock, prudent and loyal ESOP fiduciaries invest the excess funds in other assets that offer greater potential for long-term capital appreciation than cash equivalents.

37. For example, fiduciaries of the Great Lakes Cheese Co., Inc. Employee Stock Ownership Plan have kept approximately 95% of their plan's OIA assets invested in common stocks (directly or through pooled funds) during the subject period. The fiduciaries of the SCS Engineers Employee Stock Ownership Plan have kept upwards of 60% of OIA funds invested in stocks (directly or through pooled funds), and most of the remaining OIA balance in real estate and bonds. These ESOPs hold cash only for limited periods before investing the funds pursuant to their overall investment strategy.

38. Defendants' failure to invest the Aerotech ESOP's OIA in a manner that is consistent with the ESOP's investment objective is not excused by Defendants' practice of using the ESOP to repurchase Aerotech stock from departing participants and then reallocating those shares to current participants.

39. Privately held companies must offer a "put option" to employees invested in the company's stock through an ESOP. 26 U.S.C. § 409(h). A put option is the "right to require that the employer repurchase employer securities under a fair valuation formula." *Id.* § 409(h)(1)(B). The repurchase obligation cannot be placed upon the ESOP: "Under no circumstances may the put option bind the ESOP." 29 C.F.R. § 2550.408b-3(j).

40. An ESOP fiduciary may elect, but is not required, to repurchase shares instead of the company. Such a decision is subject to ERISA fiduciary duties, and the repurchase transaction must be a prudent investment action for current ESOP participants at the time the departing employee to redeem their stock.

9

41. There is no special value to be captured by the ESOP in repurchasing shares tendered by departing employees, as the shares must be purchased at the stock's current fair market value. 26 U.S.C. § 409(h)(1)(B).

42. Defendants caused the ESOP to repurchase an average of around $3.5 million to $4 million of Aerotech stock per year from departing participants between June 30, 2018 and June 30, 2023. New contributions and dividends to the ESOP totaled $5.4 million per year during the same period. The cash portion of excess contributions and dividends (some contributions were made in the form of Aerotech stock) went to increase the OIA balance, which grew from around $9 million on June 30, 2018 to around $12.2 million on June 30, 2023. Since 2009, ESOP contributions and dividends have exceeded ESOP distributions every plan year except one.

43. Accordingly, the ESOP has consistently been able to fund repurchase opportunities from current cash income. To the extent Defendants have held the OIA in cash equivalents due to future repurchase concerns, they have done so as a multi-year backup reserve, as the OIA balance has grown to equal nearly 3 years-worth of average repurchases.

44. Such management of the OIA balance is imprudent and disloyal. It does not make sense to earn negligible OIA returns for years in order to ensure that backup funds are available to execute possible future Aerotech stock repurchases.

45. First, Defendants do not have, and have not had, specific reasons to believe that current income will not be available to fund repurchases. Since 2012, Aerotech's share price has increased every plan year except one, meaning that Defendants believe the same profit levels that

have consistently sustained ESOP contributions and dividends will continue or improve in the future.[10]

46. Second, the ESOP is not obligated to make the repurchases—the company is. Repurchase liability is not a liability that the ESOP needs to manage.

47. Third, the merit of repurchases cannot be foreseen years in advance, so earning negligible returns in the meantime is not a reasonable tradeoff. Investments in stock index funds and other available funds can be liquidated in a few days, if needed. Over the long term, stock investments are the safer bet to maximize funds for possible repurchases, not cash equivalents. *See supra*.

48. While adopting a principal preservation strategy for the OIA does not serve participants, it does benefit the company. Maintaining a stable backup reserve provides security for the company regarding its long-term liability to repurchase company shares from ESOP participants.

49. ERISA prohibits fiduciaries from using plan assets for the benefit of the company and from subordinating participant interests to company interests. Defendants violated ERISA to the extent their OIA investment strategy is influenced by the long-term share repurchase liability of the company.

## PLAINTIFFS' LACK OF ACTUAL KNOWLEDGE

50. Until shortly before filing this action, Plaintiffs lacked knowledge of material information to support their claims. Among other things, they lacked knowledge of (1) the scope

---

[10] According to the ESOP's annual financial statements, the primary valuation input for Aerotech stock is the company's future projections of net income. The only appraisal since 2012 that did not increase the value of Aerotech stock on a per share basis was the appraisal as of June 30, 2020, during the first few months of the COVID-19 pandemic. The share value increased again in 2021 and in each successive year.

of Defendants' investment mandate, including Defendants' discretion to invest OIA funds in non-Aerotech stocks and other asset classes; (2) the ESOP's net cash flows and accumulated cash balances, which is necessary to evaluate the time horizon and prudence of OIA investments; (3) the performance of other asset classes over relevant periods; and (4) the conduct of similarly situated ESOP fiduciaries who invest their plans' OIA funds in stocks and other asset classes. Plaintiffs also do not have actual knowledge of Defendants' fiduciary process concerning the OIA funds and have no means to access such information until discovery commences. Plaintiffs' allegations are based on inferences drawn from the facts adduced to date and are made upon information and belief and in reliance on the investigation of counsel.

## **PLAN-WIDE RELIEF**

51. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the ESOP to bring an action on behalf of the ESOP to obtain for the ESOP the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek recovery on behalf of the ESOP pursuant to this statutory provision.

52. Plaintiffs seek recovery for injuries to the ESOP sustained as a result of fiduciary breaches and seeks equitable relief on behalf of the ESOP as a whole pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

53. Plaintiffs are adequate to bring this derivative action on behalf of the ESOP, and their interests are aligned with other participants and beneficiaries. Plaintiffs do not have any conflicts of interest with any participants or beneficiaries that would impair or impede their abilities to pursue this action. Plaintiffs have retained counsel experienced in ERISA litigation and intend to pursue this action vigorously on behalf of the ESOP.

## **CLASS ACTION ALLEGATIONS**

54. Plaintiffs additionally and alternatively seek certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

55. Plaintiffs asserts their claims on behalf of a class of participants and beneficiaries of the ESOP defined as follows:

> All participants and beneficiaries of Aerotech, Inc. Employee Stock Ownership Plan and Trust since the date that is six years prior to the filing of this action.

56. <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. The ESOP had hundreds of participants during the relevant period.

57. <u>Typicality</u>: Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs were ESOP participants and Plaintiffs suffered injuries as a result of Defendants' violations of ERISA. Defendants treated Plaintiffs consistently with other Class members with regard to the ESOP. Defendants' improper actions affected all ESOP participants similarly.

58. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and they have retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

59. <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

> a. Whether Defendants were fiduciaries with respect to the ESOP and the scope of their fiduciary duties;

    b.    Whether Defendants failed to comply with the ERISA fiduciary standards of prudence and loyalty in violation of 29 U.S.C. § 1104(a)(1);

    c.    Whether Defendants invested ESOP assets for the benefit the company, a party in interest the ESOP, in violation of 29 U.S.C. § 1106(a);

    d.    The proper form of equitable and injunctive relief; and

    e.    The proper measure of monetary relief.

60.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

61.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as disgorgement of proceeds of the prohibited transactions and allocation of the proceeds to participants, would be dispositive of the interests of all participants.

62.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management

of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

63. Plaintiffs and their undersigned counsel will provide notice to the class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

## COUNT I
## 29 U.S.C. § 1104(a)(1)

64. Plaintiffs incorporate the foregoing paragraphs by reference.

65. Defendant ESOT Committee is the ESOP fiduciary with discretion concerning how the ESOP assets contained within the OIA are invested.

66. Defendant ESOT Committee violated ERISA fiduciary standards set forth in 29 U.S.C. § 1104(a)(1) by failing to prudently invest the OIA in a manner consistent with the investment objectives of the ESOP and its participants, and by allowing company interests to dictate its investment strategy.

67. Defendant Aerotech violated ERISA fiduciary standards by failing to monitor the ESOT Committee's management of the Plan and failing to ensure that the ESOT Committee was investing the OIA with the care, skill, and diligence appropriate under the circumstances. Defendant Aerotech further failed to mandate compliance or remove fiduciaries when the ESOT Committee failed to abide by its fiduciary duties.

68. Defendants' violations of 29 U.S.C. § 1104(a)(1) caused the ESOP injury in the form of lost investment earnings, and Defendants' deficient fiduciary conduct threatens future harm to the ESOP of the same character. These injuries to the ESOP adversely affected and continue to affect participants' ESOP accounts.

15

69. Each Defendant is also liable for the fiduciary breaches of the other under 29 U.S.C. § 1105 as a co-fiduciary.

70. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3), Plaintiffs, the ESOP, and the Class are entitled to recover losses caused by Defendants' violations of 29 U.S.C. § 1104(a)(1) and other equitable and injunctive relief.

## COUNT II
### 29 U.S.C. § 1106(a)

71. Plaintiffs incorporate the foregoing paragraphs by reference.

72. Defendant ESOT Committee is the ESOP fiduciary with discretion concerning how the ESOP assets contained within the OIA are invested.

73. Defendant Aerotech is a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(C) because its employees are the ESOP's participants.

74. Defendant ESOT Committee violated 29 U.S.C. § 1106(a)(1)(D) by using OIA funds for the benefit of Aerotech by pursuing a principal preservation strategy for the OIA for the purpose of providing Aerotech security concerning its long-term liability to repurchase Aerotech stock from ESOP participants.

75. Defendant ESOT Committee's violation of 29 U.S.C. § 1106(a) caused the ESOP injury in the form of lost investment earnings, and Defendant ESOT Committee's deficient fiduciary conduct threatens future harm to the ESOP of the same character. These injuries to the ESOP adversely affected and continue to affect participants' ESOP accounts.

76. Defendant Aerotech is liable for Defendant ESOT Committee's violations of Section 1106(a) as a co-fiduciary, pursuant to 29 U.S.C. § 1105, because Aerotech knew that the ESOT Committee was investing OIA funds for Aerotech's benefit and failed to intervene to

ensure the ESOT Committee invested OIA funds exclusively for the benefit of ESOP participants.

77. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3), Plaintiffs, the ESOP, and the Class are entitled to recover losses caused by Defendants' violation of 29 U.S.C. § 1106(a) and other equitable and injunctive relief.

## PRAYER FOR RELIEF

78. Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A. Certify Plaintiffs' authority to seek plan-wide relief on behalf of the ESOP pursuant to 29 U.S.C. § 1132(a)(2);

B. Alternatively, certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify Plaintiffs as class representatives, and certify their counsel as class counsel;

C. Order Defendants to make good to the ESOP all losses resulting from their violations of ERISA;

D. Impose equitable and injunctive relief sufficient to protect ESOP participants, including changes to Defendants' investment process and/or appointment of independent investment advisors and managers;

E. Award Plaintiffs reasonable attorneys' fees and costs incurred pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

F. Award prejudgment and post-judgment interest; and

G. Award such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Dated: April 24, 2024

**ENGSTROM LEE LLC**

/s/Nicholas D. Thompson
Nicholas D. Thompson, MN Bar No. 389609*
Jennifer K. Lee, MN Bar No. 399012^
Carl F. Engstrom, MN Bar No. 396298^
323 N. Washington Ave., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349

nthompson@engstromlee.com  
jlee@engstromlee.com  
cengstrom@engstromlee.com

*Admitted to the bar of the U.S. District Court for the Western District of Pennsylvania  
^*Pro Hac Vice* Motion forthcoming

**ATTORNEYS FOR PLAINTIFFS**