**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| Stephanie Schultz, Kevin Plummer, and Chad Huffer, as representatives of a class of similarly situated persons, and on behalf of the Aerotech, Inc. Employee Stock Ownership Plan and Trust, | Case No. 2:24-cv-00618-WSH |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| Aerotech, Inc. and the Aerotech, Inc. Employee Stock Ownership Plan and Trust Committee, | |
| Defendants. | |

**NATURE OF THE ACTION**

1.     Plaintiffs Stephanie Schultz, Kevin Plummer, and Chad Huffer ("Plaintiffs"), as representatives of the Class described herein, and on behalf of the Aerotech, Inc. Employee Stock Ownership Plan and Trust (the "ESOP" or "Plan"), bring this action pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), against Aerotech, Inc. ("Aerotech") and the Aerotech, Inc. Employee Stock Ownership Plan and Trust Committee (the "ESOT Committee") (collectively, "Defendants"). This case is about Defendants' failure to invest the non-employer stock assets of the ESOP prudently and for the exclusive benefit of ESOP participants. The foregoing violated Defendants' fiduciary duties under ERISA, 29 U.S.C. §§ 1104(a)(1) and 1106(a).

**PARTIES**

2.     The ESOP is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A); a "defined contribution plan" as defined by 29 U.S.C. § 1002(34) (also known as an "individual account plan"); and an "employee stock ownership plan" as defined by 29 U.S.C. § 1007(d)(6). The ESOP is sponsored by Aerotech for the benefit of its employees.

3.     Plaintiff Stephanie Schultz is a natural person and a resident of West Mifflin, PA. She is a former participant in the ESOP. She worked for Aerotech between 2016 and 2019. Her ESOP benefit was determined by the value of the ESOP's assets in her account at the time she received her distribution. Her benefit would have been greater if not for Defendants' violations of ERISA.

4.     Plaintiff Kevin Plummer is a natural person and a resident of West Leechburg, PA. He is a current participant in the ESOP. He worked for Aerotech between 2012 and 2023. His ESOP benefit is determined by the value of the ESOP's assets in his account. His ESOP

1

account would be worth more today if not for Defendants' violations of ERISA. His future ESOP account growth will be impaired if Defendants are not enjoined from further mismanagement.

5. Plaintiff Chad Huffer is a natural person and a resident of Woodstock, GA. He is a former participant in the ESOP. He worked for Aerotech between 2008 and 2020. His ESOP benefit was determined by the value of the ESOP's assets in his account at the time he received his distribution. His benefit would have been greater if not for Defendants' violations of ERISA.

6. Defendant ESOT Committee is the ESOP's governing committee established by the written terms of the ESOP. The ESOT Committee directs the ESOP's trustee with respect to how to invest ESOP assets. Accordingly, Defendant ESOT Committee is a fiduciary of the ESOP pursuant to 29 U.S.C. § 1002(21)(A)(i).

7. Defendant Aerotech is the sponsor of the Plan. Acting through its Board of Directors, Aerotech appoints and has the power to remove members of the ESOT Committee. As a result of its authority to appoint and remove fiduciaries of the ESOP, Aerotech is itself a fiduciary pursuant to 29 U.S.C. § 1002(21)(A)(i), (iii).

## JURISDICTION AND VENUE

8. Plaintiffs bring this action pursuant to 29 U.S.C. §§ 1132(a)(2) and (3), which provide that a participant in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and obtain monetary and appropriate equitable relief.

9. This case presents a federal question under ERISA and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

10. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because Defendants' violations of ERISA occurred in Pittsburgh, PA, where Aerotech is located and where the ESOP is administered.

## DEFENDANTS' VIOLATIONS OF ERISA

### *History of the ESOP and its Other Investments Account*

11.     Aerotech established the ESOP in 1977 to provide retirement benefits to employees. There are around 450 current participants in the ESOP. The ESOP averaged around 385 participants during the subject period.[1]

12.     The ESOP owns a minority interest in Aerotech.

13.     Each participant's ESOP benefit is determined by the value of the assets in their individual account.

14.     The ESOP has two types of assets: Aerotech stock and other investments. The other investments are known as the "Other Investments Account" ("OIA").

15.     Each participant's account value is equal to their *pro rata* share of the ESOP's total asset value.

16.     Participants are credited with a share of company contributions and Aerotech stock while employed by Aerotech. Participant credits are then adjusted over time by investment gains, losses, and income received by the ESOP on its Aerotech stock and OIA investments.

### *Defendants' Investment of the ESOP's Other Investments Account*

17.     Participants have no control over the investment of the OIA and rely on Defendants to prudently invest the OIA funds for the purpose of increasing the value of their individual accounts.

18.     Between June 30, 2018 and June 30, 2023,[2] the ESOP averaged around $10.4 million in the OIA. As of June 30, 2023, the OIA balance was over $12 million. The OIA

---

[1] ERISA claims cover six years from the date of filing. *See* 29 U.S.C. § 1113(1).
[2] The ESOP files annual financial statements with the Department of Labor (DOL). The statement concerning the ESOP's financial condition as of June 30, 2023 is its most recently

balance has grown over time through the accumulation of Aerotech stock dividends and contributions from the company.

19. At all times, Defendants have kept the OIA invested exclusively in assets on the lowest end of the risk-return spectrum, investing exclusively in money market funds and short-term certificates of deposit with a term of less than a year. Indeed, the ESOT Committee has kept the OIA invested exclusively in such cash equivalents since at least 2009.[3]

### The Prudent Investor Rule

20. ERISA fiduciaries must follow the "prudent investor rule" adopted from the law of trusts. *Buccino v. Cont'l Assur. Co.*, 578 F. Supp. 1518, 1521 (S.D.N.Y. 1983) ("[The] common law prudent investor' rule [was] codified by ERISA.").

21. Pursuant to the prudent investor rule, fiduciaries must invest plan assets in a manner that is "reasonably designed to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain." 29 C.F.R. § 2550.404a-1(b)(2)(i); *see also* Restatement (Third) of Trusts (2007) (hereinafter "3d Rest.") § 90(a) (fiduciaries must pursue "an overall investment strategy[] which … incorporate[s] risk and return objectives reasonably suitable to the trust.").

22. The prudent investor rule departs from earlier understandings of prudence that overemphasized risk avoidance. *See* 3d Rest. § 90 cmts. a & k ("[T]he prudent investor rule is "an extension and clarification of the traditional …  'prudent man rule,'" pursuant to which "[b]road categories of properties and techniques came to be branded as 'speculative' [and] … classified as 'impermissible'"); *see also id.*, Reporter's Note to cmt. e. ("'[S]afety' of the funds

---

filed report. The next report concerning the period July 1, 2023 to June 30, 2024 is expected in late 2024.

[3] The DOL provides on-demand access to full annual financial reports back to 2009.

invested was often identified as 'the primary object to be obtained by a trustee' under traditional doctrine[.]").

23.     Rather than avoid risk, fiduciaries must manage risk in pursuit of the objectives of the plan. *See* Max M. Schanzenbach, *et al.* "The Prudent Investor Rule and Market Risk: An Empirical Analysis." Journal of Empirical Legal Studies Volume 14, Issue 1, 129:168, 130 (March 2017) ("The prudent investor rule … reorients trust investment from risk avoidance to risk management[.]").

24.     An appropriate investment strategy suited to the objectives of the plan must consider the time horizons and needs of beneficial investors. *See* 29 C.F.R. § 2550.404a-1(b)(4) ("A fiduciary's determination with respect to an investment" must "us[e] appropriate investment horizons consistent with the plan's investment objectives."); *see also* 3d Rest. § 90 cmt. k ("Asset selection … requires sensitivity to the trust's investment time horizons[.]").

25.     A plan's risk tolerance "largely depends" on how long funds will be held. *Id.* cmt. e(1).

26.     The prudent investor rule prohibits fiduciaries from considering any interests other than the interests of beneficiaries. *Id.* cmt. c (stating that the duty of loyalty "prohibit[s] … investing in a manner that is intended to serve interests other than those of the beneficiaries"). A fiduciary may not "sacrifice investment return" to serve their own interests. *See* 29 C.F.R. 2550.404a-1(c)(1); *see also Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 298 (5th Cir. 2000).

27.     While "there are endless variations in reasonable strategies for investing and for the prudent management of risk," a fiduciary's investment approach "must be reasonably supported in concept and must be implemented with proper care, skill, and caution." *See* Rest. 3d § 90 cmts. f & h.

5

28.     Whether a fiduciary satisfied its duty is a test of conduct and process. *Id.* cmt. (e)(1) ("The test of prudence is one of conduct, not one of performance."). Courts consider whether fiduciaries "employed the appropriate methods to investigate and determine the merits of a particular investment." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996).

### The ESOP's Objectives and Tolerance for Risk

29.     Aerotech chose to structure the ESOP as a retirement plan.

30.     Employee retirement plans are generally long-term investments. *See* 72 Fed. Reg. 60452, 60463 (finding that retirement investments made on behalf of employees "ought to and often will be long-term investments"). The Department of Labor, which oversees employee retirement plans, has instructed that "investments made on behalf of . . . participants ought to and often will be long-term investments," warning that overallocation to capital preservation strategies will "decreas[e] the likelihood that participants . . . have adequate retirement savings." *Id.*

31.     Due to being structured as a retirement benefit, ESOP participants suffer an extra 10% penalty tax to use their accounts before reaching retirement age, in addition to having the entirety of any withdrawal taxed as income. *See* 26 U.S.C. § 72(t).

32.     ESOP participants are further encouraged to hold their ESOP accounts until retirement by deferral of tax on account contributions and investment earnings. *See* 26 U.S.C. § 501(a).

33.     The average U.S. worker at any given time is around 20 years or more from retirement age. *See* U.S. Bureau of Labor Statistics. "Employment Projections: Median age of the labor force, by sex, race and ethnicity."

34.     The average U.S. worker is unprepared for retirement. *See* National Institute on Retirement Security. "Statement before the Senate Committee on Health, Education, Labor, and

6

Pensions" at 3. (Feb. 28, 2024) ("The data indicate that most Americans, particularly middle-class workers, are falling far short when it comes to saving enough money for a financially secure retirement."). The shift from defined benefit to defined contribution plans like the ESOP has left a substantial retirement readiness deficit in the U.S. *See id.* at 5.

35.     On information and belief, the average Aerotech worker is similar to or younger than the average U.S. worker in terms of years from retirement, and is similar to other U.S. workers in terms of lack of retirement readiness. Aerotech employs workers of all ages. Aerotech does not offer a defined benefit plan. While Aerotech offers a second defined contribution plan, the average participant's account balance between the two plans is just over $200,000—less than a quarter of the savings necessary to comfortably retire in Pennsylvania. *See* CNBC, *How much money you need to retire in every U.S. State*, Jan. 15, 2024, https://www.cnbc.com/2024/01/15/how-much-money-you-need-to-retire-in-every-us-state.html.

36.     Generally, Aerotech employees work because they need regular income to support themselves and their families. The typical Aerotech employee does not have generational wealth or other assets set aside sufficient to support themselves in retirement.

37.     Based on the foregoing, ESOP participants have a long investment horizon and need their account values to grow in order to generate more retirement income. This means that ESOP participants have a high tolerance for risk associated with short-term market volatility and need an investment strategy focused on long-term capital appreciation.

38.     Considerations specific to the ESOP's function as an employee stock plan do not alter the above conclusion. Investing in employer stock through a retirement plan is intended to be a long-term investment that appreciates over the course of an employee's career. The overall

7

focus of the ESOP on company stock bolsters the conclusion that ESOP assets should be invested for the purpose of providing long-term capital appreciation to participants.

39.     The ESOP is no less focused on the long term than the typical retirement plan. Aerotech promotes the ESOP to employees as a retirement benefit—indeed, the company refrains from matching contributions to employees' 401(k) accounts, communicating to employees that it does not make matching 401(k) contributions because it supports employees' retirement savings through the ESOP instead.

40.     The ESOP's risk associated with its large concentration in a single security (Aerotech stock) does not change the time horizon or investment objective for OIA funds. The risk of loss associated with a specific security is known as "specific" or "nonmarket" risk, as opposed to "market" risk, which is the risk associated with vagaries in the market for such a security generally. *See id.* cmt. e.

41.     While it is appropriate to manage specific risk in one part of the portfolio through investments in another part of the portfolio, concern for specific risk does change the underlying investment time horizon or objective for the other funds to be invested. Rather, specific risk is managed by owning different securities of similar character. *See id.* gen. note to cmts. e-h (investing in "multiple stocks" instead of "a single stock" will "reduce[] … the firm specific … risk"). Accordingly, the way to reduce the risk that participants' accounts suffer large losses in Aerotech stock is not to stick the rest of its assets under a mattress where they cannot grow—it is to invest in other stocks, whose gains can help offset losses in the employer's stock. Notwithstanding Plan participants' long-term investment objective, the ESOT Committee has kept the OIA invested exclusively in cash equivalents, namely money market accounts and short-term certificates of deposit.

8

*Mismatch Between Strategy and Purpose*

42.     The ESOT Committee's investment of the OIA is not suited to the ESOP's long-term capital appreciation objective and tolerance for risk.

43.     At all times since the ESOP began accruing an OIA balance, Defendants have invested the OIA exclusively in money market funds and certificates of deposit. These assets are suited to short-term investment objectives. *See* Rest. 3d § 90 cmt. l. (stating that money market funds and certificates of deposit are "useful in making modest amounts of trust funds productive for limited periods of time").

44.     In contrast, when an investor's objective is long-term capital appreciation, it is proper to invest in stocks. *See id.* ("Historically, corporate stocks have provided greater total return over the long term … [and] contribute to a deliberate effort to increase the real value of the trust estate."). Defendants have not invested any OIA funds in stocks.

45.     A prudent fiduciary would have been aware of these facts. In the 30-year period between 1988 and 2017 (the last full calendar year before the beginning of the subject period), the ICE BofA 3-month Treasury Bill index—the index used most often to benchmark money market fund performance—averaged returns of 3.32% per year. During that same period, the Federal Reserve's index of 3-month Certificates of Deposit averaged a 3.47% rate of return. A $10,000 investment earning these rates of return would be worth $26,639 and $27,824, respectively, after 30 years. Considering inflation averaged 2.56% per year, cash investments did little more than hold their value.

46.     In contrast, the S&P 500—the index used most often to measure large company domestic stocks—averaged a 10.70% rate of return between 1988 and 2017. The Russell 2000—the index most often used to measure small company domestic stocks—averaged a 10.46% rate of return. A $10,000 investment earning these rates of return in 1988 would be worth $211,071

9

and $197,766, respectively, after 30 years. Stock investments beat inflation by a substantial degree and provide real capital appreciation to investors.

47.     Broader historical trends are the same. For 150 years in advanced economies throughout the world, "safe" investments in cash equivalents have beat inflation by around 1% per year on average, while stocks have outpaced inflation by around 7% per year.[4] As illustrated above, the difference over the length of a career is measured in the hundreds of thousands of dollars, even assuming a relatively small principal balance of $10,000.

48.     The average OIA participant balance during the subject period was around $28,000. A 6% average annual return differential between cash and stocks over next 30 years will produce a retirement savings deficit of between $175,000 to $400,000 for an ESOP participant with a $28,000 OIA balance today.[5]

49.     Monitoring recent market data also would have shown the ESOT Committee that cash equivalents earn significantly less over the long term, even when valued during declines in other asset classes.

50.     The illustration below ranks the 10-year average annual returns of stocks, bonds, and cash equivalents, as well as their calendar year returns. An investor over any 10-year period shown would have been substantially better off invested stocks and other asset classes than cash

---

[4] *See* Oscar Jorda, *et al.* "The Rate of Return on Everything, 1870-2014." The Quarterly Journal of Economics (2019), 1225-1298, at 1228-30, 1241, 1280-81.

[5] This calculation is based on the DOL's model for quantifying retirement savings losses. *See* Department of Labor, "A Look at 401(k) Plan Fees," at 2 (Sept. 2019), *available at* https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited April 24, 2024). The model assumes no additional contributions are made. In Plaintiffs' adaptation of the DOL model, the high estimated loss of $397,768 is based on an assumed annual rate of return of 10% on stocks and 4% on cash equivalents. The low estimated loss of $175,403 is based on an assumed annual rate of return of 7% on stocks and 1% on cash equivalents.

equivalents, even if the investor was required to withdraw their balance at a low point for other asset classes.

***10-Year Average Annual Returns and Calendar Year Returns Ranked, 2018-2023[6]***

| | 2018 | | 2019 | | 2020 | | 2021 | | 2022 | | 2023 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Large Cap Stocks** | 10-Year Avg. | 13.12% | 10-Year Avg. | 13.56% | 10-Year Avg. | 13.88% | 10-Year Avg. | 16.55% | 10-Year Avg. | 12.56% | 10-Year Avg. | 12.03% |
| | 10-Year Rank | 1st | 10-Year Rank | 1st | 10-Year Rank | 1st | 10-Year Rank | 1st | 10-Year Rank | 1st | 10-Year Rank | 1st |
| | *Calendar Year* | *-4.38%* | *Calendar Year* | *31.49%* | *Calendar Year* | *18.40%* | *Calendar Year* | *28.71%* | *Calendar Year* | *-18.11%* | *Calendar Year* | *26.29%* |
| | *Calendar Rank* | *5th* | *Calendar Rank* | *1st* | *Calendar Rank* | *2nd* | *Calendar Rank* | *1st* | *Calendar Rank* | *6th* | *Calendar Rank* | *1st* |
| **Small Cap Stocks** | 10-Year Avg. | 11.97% | 10-Year Avg. | 11.83% | 10-Year Avg. | 11.20% | 10-Year Avg. | 13.23% | 10-Year Avg. | 9.01% | 10-Year Avg. | 7.16% |
| | 10-Year Rank | 2nd | 10-Year Rank | 2nd | 10-Year Rank | 2nd | 10-Year Rank | 2nd | 10-Year Rank | 2nd | 10-Year Rank | 2nd |
| | *Calendar Year* | *-11.01%* | *Calendar Year* | *25.52%* | *Calendar Year* | *19.96%* | *Calendar Year* | *14.82%* | *Calendar Year* | *-20.44%* | *Calendar Year* | *16.93%* |
| | *Calendar Rank* | *7th* | *Calendar Rank* | *2nd* | *Calendar Rank* | *1st* | *Calendar Rank* | *2nd* | *Calendar Rank* | *7th* | *Calendar Rank* | *3rd* |
| **High Yield Bonds** | 10-Year Avg. | 11.12% | 10-Year Avg. | 7.57% | 10-Year Avg. | 6.80% | 10-Year Avg. | 6.83% | 10-Year Avg. | 4.03% | 10-Year Avg. | 4.60% |
| | 10-Year Rank | 3rd | 10-Year Rank | 4th | 10-Year Rank | 4th | 10-Year Rank | 4th | 10-Year Rank | 4th | 10-Year Rank | 3rd |
| | *Calendar Year* | *-2.08%* | *Calendar Year* | *14.32%* | *Calendar Year* | *7.11%* | *Calendar Year* | *5.28%* | *Calendar Year* | *-11.19%* | *Calendar Year* | *13.45%* |
| | *Calendar Rank* | *4th* | *Calendar Rank* | *5th* | *Calendar Rank* | *5th* | *Calendar Rank* | *4th* | *Calendar Rank* | *4th* | *Calendar Rank* | *4th* |
| **Long-Term Bonds** | 10-Year Avg. | 7.40% | 10-Year Avg. | 7.99% | 10-Year Avg. | 8.24% | 10-Year Avg. | 6.42% | 10-Year Avg. | 2.13% | 10-Year Avg. | 3.88% |
| | 10-Year Rank | 4th | 10-Year Rank | 3rd | 10-Year Rank | 3rd | 10-Year Rank | 5th | 10-Year Rank | 5th | 10-Year Rank | 5th |
| | *Calendar Year* | *-6.76%* | *Calendar Year* | *23.36%* | *Calendar Year* | *13.32%* | *Calendar Year* | *-1.18%* | *Calendar Year* | *-25.29%* | *Calendar Year* | *10.73%* |
| | *Calendar Rank* | *6th* | *Calendar Rank* | *3rd* | *Calendar Rank* | *3rd* | *Calendar Rank* | *8th* | *Calendar Rank* | *8th* | *Calendar Rank* | *5th* |
| **International Stocks** | 10-Year Avg. | 6.24% | 10-Year Avg. | 5.32% | 10-Year Avg. | 5.19% | 10-Year Avg. | 7.84% | 10-Year Avg. | 4.59% | 10-Year Avg. | 4.32% |
| | 10-Year Rank | 5th | 10-Year Rank | 5th | 10-Year Rank | 5th | 10-Year Rank | 3rd | 10-Year Rank | 3rd | 10-Year Rank | 4th |
| | *Calendar Year* | *-14.09%* | *Calendar Year* | *22.49%* | *Calendar Year* | *7.59%* | *Calendar Year* | *12.62%* | *Calendar Year* | *-14.29%* | *Calendar Year* | *17.94%* |
| | *Calendar Rank* | *8th* | *Calendar Rank* | *4th* | *Calendar Rank* | *5th* | *Calendar Rank* | *3rd* | *Calendar Rank* | *5th* | *Calendar Rank* | *2nd* |
| **Intermediate-Term Bonds** | 10-Year Avg. | 4.84% | 10-Year Avg. | 4.25% | 10-Year Avg. | 4.18% | 10-Year Avg. | 3.53% | 10-Year Avg. | 1.75% | 10-Year Avg. | 2.46% |
| | 10-Year Rank | 6th | 10-Year Rank | 6th | 10-Year Rank | 6th | 10-Year Rank | 6th | 10-Year Rank | 6th | 10-Year Rank | 6th |
| | *Calendar Year* | *0.01%* | *Calendar Year* | *9.52%* | *Calendar Year* | *7.08%* | *Calendar Year* | *-1.03%* | *Calendar Year* | *-9.10%* | *Calendar Year* | *6.94%* |
| | *Calendar Rank* | *3rd* | *Calendar Rank* | *6th* | *Calendar Rank* | *6th* | *Calendar Rank* | *7th* | *Calendar Rank* | *3rd* | *Calendar Rank* | *6th* |
| **Short-Term Bonds** | 10-Year Avg. | 1.52% | 10-Year Avg. | 1.54% | 10-Year Avg. | 1.60% | 10-Year Avg. | 1.39% | 10-Year Avg. | 0.88% | 10-Year Avg. | 1.27% |
| | 10-Year Rank | 7th | 10-Year Rank | 7th | 10-Year Rank | 7th | 10-Year Rank | 7th | 10-Year Rank | 7th | 10-Year Rank | 7th |
| | *Calendar Year* | *1.60%* | *Calendar Year* | *4.03%* | *Calendar Year* | *3.33%* | *Calendar Year* | *-0.47%* | *Calendar Year* | *-3.69%* | *Calendar Year* | *4.61%* |
| | *Calendar Rank* | *2nd* | *Calendar Rank* | *7th* | *Calendar Rank* | *7th* | *Calendar Rank* | *6th* | *Calendar Rank* | *2nd* | *Calendar Rank* | *7th* |
| **Cash Equivalents** | 10-Year Avg. | 0.37% | 10-Year Avg. | 0.58% | 10-Year Avg. | 0.64% | 10-Year Avg. | 0.63% | 10-Year Avg. | 0.76% | 10-Year Avg. | 1.25% |
| | 10-Year Rank | 8th | 10-Year Rank | 8th | 10-Year Rank | 8th | 10-Year Rank | 8th | 10-Year Rank | 8th | 10-Year Rank | 8th |
| | *Calendar Year* | *1.87%* | *Calendar Year* | *2.28%* | *Calendar Year* | *0.67%* | *Calendar Year* | *0.05%* | *Calendar Year* | *1.46%* | *Calendar Year* | *5.01%* |
| | *Calendar Rank* | *1st* | *Calendar Rank* | *8th* | *Calendar Rank* | *8th* | *Calendar Rank* | *5th* | *Calendar Rank* | *1st* | *Calendar Rank* | *8th* |

51.     No prudent fiduciary shopping from this menu during the subject period would invest 100% of their portfolio in cash equivalents for the long term. By investing exclusively in short-term assets with the lowest long-term returns, Defendant has failed to tailor its OIA strategy to ESOP participants' time horizon and risk tolerance.

---

[6] Asset classes are represented by the following indexes: Large Cap Stocks—S&P 500; Small Cap Stocks—Russell 2000; High Yield Bonds—Bbg US Corp High Yield; International Stocks—MSCI World Ex US; Long-Term Bonds—Bbg US Long Credit; Intermediate-Term Bonds—Bbg US Interm Credit; Short-Term Bonds—Bbg US Gov/Credit 1-3Y; Cash Equivalents--ICE BofA US 3M Trsy Bill.

*The Conduct of Similarly Situated Fiduciaries*

52.     Prudent ESOP fiduciaries acting under similar circumstances do not sideline funds exclusively in cash equivalents, as Defendants have done. One strategy is to allow participants to direct their "other investments" balances to pooled funds that offer exposure to stocks and other asset classes. This is accomplished by offering such pooled funds within the ESOP or by allowing participants to move balances to the company's 401(k) plan. Either approach would be appropriate for Aerotech, as the company considers its ESOP contributions to be a replacement for 401(k) matching contributions.

53.     Even where the ESOP fiduciary retains sole investment control and the plan does not allow ESOP-to-401(k) transfers, Defendants' conduct is not the norm. When ESOPs accumulate excess funds not invested in employer stock, prudent and loyal ESOP fiduciaries invest the excess funds in other assets that offer greater potential for long-term capital appreciation than cash equivalents.

54.     For example, fiduciaries of the Great Lakes Cheese Co., Inc. Employee Stock Ownership Plan have kept approximately 95% of their plan's OIA assets invested in common stocks (directly or through pooled funds) during the subject period. The fiduciaries of the SCS Engineers Employee Stock Ownership Plan have kept upwards of 60% of OIA funds invested in stocks (directly or through pooled funds), and most of the remaining OIA balance in real estate and bonds. These ESOPs hold cash only for limited periods before investing the funds pursuant to their overall investment strategy. A smaller plan that has taken a large equity position with OIA funds is the First American Bank Corporation Employee Stock Ownership Plan. The First American Bank ESOP invests around 98% of its $12 million OIA balance in a diversified portfolio of equities through registered mutual funds and exchange traded funds.

55.     Employee stock plans that have OIA balances that are similar to or smaller than that of the ESOP have also taken large positions in a diversified portfolio of equity investments using OIA funds. The Minnesota Elevator, Inc. Employee Stock Ownership Plan invests around 73% of its $8.7 million of OIA funds in stocks through an account with a professional asset manager. The Weststar Bank Holding Company, Inc. Employee Stock Ownership Plan invests around 72% of its $5.5 million of OIA funds in stocks through registered mutual funds. The Riverside Construction Company, Inc. Employee Stock Ownership Plan invests around 69% of its $5.3 million of OIA funds in stocks through registered mutual funds. The Ewing-Foley, Inc. Employee Stock Ownership Plan invests around 63% of its $5.7 million of OIA funds in stocks through registered mutual funds and exchanged traded funds. The Oil Well Service Co. Employee Stock Ownership Plan invests around 60% of its $6.1 million of OIA funds in stocks through an account with a professional asset manager.

### Aerotech's Repurchase Obligation

56.     Defendants' failure to invest the Aerotech ESOP's OIA in a manner that is consistent with the ESOP's investment objective is not excused by Defendants' practice of using the ESOP to repurchase Aerotech stock from departing participants and then reallocating those shares to current participants.

57.     Privately held companies offering an ESOP must offer departing participants the ability to sell their shares to the company at fair market value, a feature known as a "put option." 26 U.S.C. § 409(h). A put option is the "right to require that the employer repurchase employer securities under a fair valuation formula." *Id.* § 409(h)(1)(B). The repurchase obligation cannot be placed upon the ESOP: "Under no circumstances may the put option bind the ESOP." 29 C.F.R. § 2550.408b-3(j).

13

58.     An ESOP fiduciary may elect, but is not required, to repurchase shares instead of the company. Such a decision is subject to ERISA fiduciary duties, and the repurchase transaction must be a prudent investment action for current ESOP participants at the time the departing employee redeems their stock.

59.     There is no special value to be captured by the ESOP in repurchasing shares tendered by departing employees, as the shares must be purchased at the stock's current fair market value. 26 U.S.C. § 409(h)(1)(B).

60.     Defendants caused the ESOP to repurchase an average of around $3.5 million to $4 million of Aerotech stock per year from departing participants between June 30, 2018 and June 30, 2023. New contributions and dividends to the ESOP totaled $5.4 million per year during the same period. The cash portion of excess contributions and dividends (some contributions were made in the form of Aerotech stock) went to increase the OIA balance, which grew from around $9 million on June 30, 2018 to around $12.2 million on June 30, 2023. Since 2009, ESOP contributions and dividends have exceeded ESOP distributions every plan year except one.

61.     Accordingly, the ESOP has consistently been able to fund repurchase opportunities from current cash income. To the extent Defendants have held the OIA in cash equivalents due to future repurchase concerns, they have done so as a multi-year backup reserve, as the OIA balance has grown to equal nearly 3 years-worth of average repurchases.

62.     Yet Defendants do not have, and have not had, specific reasons to believe that current income will not be available to fund repurchases. Since 2012, Aerotech's share price has increased every plan year except one, meaning that Defendants believe the same profit levels that

14

have consistently sustained ESOP contributions and dividends will continue or improve in the future.[7]

63.    Further, the ESOP is not obligated to make the repurchases—the company is. Repurchase liability is not a liability that the ESOP needs to manage.

64.     The merit of repurchases cannot be foreseen years in advance, so earning negligible returns in the meantime is not a reasonable tradeoff. Investments in stock index funds and other available funds can be liquidated in a few days, if needed. Over the long term, stock investments are the safer bet to maximize funds for possible repurchases, not cash equivalents. *See supra*.

65.    There are numerous other ways that Defendants could have managed its repurchase obligation that would have protected against the potential for negative impacts to the corporation, and would not have required leaving the Plan's OIA assets entirely in cash.

66.    *First*, Aerotech could have used different methods for repurchasing stock. The Plan uses a method called *internal recycling*, in which assets held in current employees' accounts are used to buy the stock held by participants who are selling their stock. The Plan could have instead used a method known as *immediate recycling*, where the company purchase shares (using the funds that would otherwise be contributed or paid as dividends to the ESOP) and then immediately recontributes those shares back to the ESOP. As described *supra* ¶¶ 60–61, Aerotech had sufficient contributions and dividends to fund the company's repurchase obligation, and utilization of this method would have allowed the OIA assets to be invested in a

---

[7] According to the ESOP's annual financial statements, the primary valuation input for Aerotech stock is the company's future projections of net income. The only appraisal since 2012 that did not increase the value of Aerotech stock on a per share basis was the appraisal as of June 30, 2020, during the first few months of the COVID-19 pandemic. The share value increased again in 2021 and in each successive year.

manner consistent with the Plan's time horizon, objectives, and risk tolerance. Further, rather than accumulate assets in cash in case contributions and dividends were not sufficient in a particular year, Aerotech could have employed a method known as *releveraging* in such year, which involves the corporation's borrowing money to fund the repurchase, loaning the money to the ESOP to fund the repurchase obligation, then creating a new internal loan for the ESOP to repay to the company. This would have managed the repurchase obligation while permitting investment of OIA assets towards participants' retirement goals.

67.    Second, Aerotech could have used funding sources other than cash within the OIA. These sources include company dividends, current-year contributions, a corporate sinking fund or line of credit, or corporate debt that is repaid through a new internal loan. Using these funding sources, or in the case of corporate debt and the line of credit, having them available as an option, would have permitted Aerotech to fully satisfy its repurchase obligations while allowing Defendants to prudently invest the Plans' OIA assets in long-term investments consistent with participants' financial objectives and the Plan's risk tolerance.

68.    Further, allocating OIA funds to a long-term investment strategy does not make them unavailable for potential future recycling transactions or other purposes. Pooled funds with both long- and short-term investment objectives that will settle customer withdrawals in cash within days (or the same day) are equally available for Defendant to use for repurchase. As a result, equity and bond investments held in mutual funds or exchange-traded funds—the most common vehicles used for OIA accounts—offer materially the exact same liquidity as cash investments.

69.    The difference between short- and long-term funds is in the risk that participants will have lost buying power at the point of exchange. If the fund is exchanged long after it was

16

purchased, the risk of loss of buying power is greater with the short-term fund. *See* Rest. 3d § 90 cmt. l ("[A] primary and proper attraction of common stocks [for long-term appreciation] is that they offer trustees a hedge against loss of purchasing power."). If the liquidation occurs shortly after the fund was purchased, the risk of loss of buying power is greater with the long-term fund. *See id.* The choice is not all-or-nothing. A proper risk management decision must be made based on when the funds are more likely to be liquidated. Since the OIA funds are likely to be held for the long term—even if they could eventually be liquidated to complete a recycling transaction—a long-term strategy is needed.

70.     The conduct of other fiduciaries demonstrates that prudent ESOP fiduciaries do not hold ESOP assets in cash to satisfy the company's repurchase obligation. Most ESOPs do not hold more than a *de minimis* amount of cash equivalents. Among all ESOPs with more than 100 participants at year-end 2022, the median cash holding was less than 0.10% of total plan assets. In contrast, the Aerotech ESOP held over 20% of its assets in cash or cash equivalents as of the end of each plan year between 2018 and 2023.

### Inferences Regarding Defendants' Processes

71.     Based on the foregoing, it is reasonable to infer—and Plaintiffs therefore allege—that Defendants failed to engage in a prudent process to investigate and structure an appropriate investment strategy for the OIA. Among other things, Defendants appear to have failed to consider how long OIA funds would be held; whether participants had accumulated sufficient assets for retirement; the differential in long-term average returns among various asset classes; or how to best manage risks such as the specific risk posed by the ESOP's concentration in Aerotech stock.

72.     It is also reasonable to infer—and Plaintiffs further allege—that Defendants were guided by improper, self-serving considerations concerning OIA investments. Holding a large

17

OIA balance benefits Aerotech because the company can use the OIA as a backup reserve to satisfy its long-term liability to repurchase shares from departing participants. The company and its non-ESOP shareholders also obtain tax benefits when the company transfers assets to the OIA.

73.     While both the company and ESOP participants benefit from having a large OIA balance, their interests diverge concerning the appropriate investment strategy. Participants want (and need) the OIA to appreciate over the long term, as participants take those increases with them when they leave the ESOP. Aerotech, on the other hand, is interested in the OIA only as a matter of liability management. Aerotech does not receive any benefit from generating funds in excess of its repurchase liability.

74.     Defendant's OIA investment strategy implies that Defendant managed the OIA with an eye towards serving the company, not participants, in violation of ERISA.

### *Losses to the ESOP*

75.     Since mid-2018, the ESOP has lost millions in earnings due to Defendants' failure to prudently invest OIA funds. OIA investment earnings between June 30, 2018 and June 30, 2023 were negligible. The ESOP earned $778,539 on OIA investments at an average annual rate of 1.46%.

76.      Had Defendants invested the OIA in an index fund tracking the S&P 500 over the same period, the Plan would have earned around $7.7 million. Defendants' fiduciary neglect cost ESOP participants $6.9 million during this period, or more than $17,000 per participant.[8]

---

[8] The per-participant calculation is based on the ESOP's average number of participants with account balances during the period, 385. Since June 30, 2023, stocks have further outpaced cash equivalents (as of April 22, 2024); assuming Defendants have continued to hold cash equivalents since the ESOP's latest annual report, the loss ESOP's loss has surpassed $6.9 million, and will likely continue to grow over the long term.

77.     The ESOP's losses have likely increased since June 30, 2023. In the one-year period since June 30, 2023, an index fund tracking the S&P 500 has outperformed a typical money market fund by approximately 19%. This discrepancy would have caused losses of more than $2 million during that period, given the Plan's OIA balance as of June 30, 2023.

## PLAINTIFFS' LACK OF ACTUAL KNOWLEDGE

78.     Until shortly before filing this action, Plaintiffs lacked knowledge of material information to support their claims. Among other things, they lacked knowledge of (1) the scope of Defendants' investment mandate, including Defendants' discretion to invest OIA funds in non-Aerotech stocks and other asset classes; (2) the ESOP's net cash flows and accumulated cash balances, which is necessary to evaluate the time horizon and prudence of OIA investments; (3) the performance of other asset classes over relevant periods; and (4) the conduct of similarly situated ESOP fiduciaries who invest their plans' OIA funds in stocks and other asset classes. Plaintiffs also do not have actual knowledge of Defendants' fiduciary process concerning the OIA funds and have no means to access such information until discovery commences. Plaintiffs' allegations are based on inferences drawn from the facts adduced to date and are made upon information and belief and in reliance on the investigation of counsel.

## PLAN-WIDE RELIEF

79.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the ESOP to bring an action on behalf of the ESOP to obtain for the ESOP the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek recovery on behalf of the ESOP pursuant to this statutory provision.

80.     Plaintiffs seek recovery for injuries to the ESOP sustained as a result of fiduciary breaches and seeks equitable relief on behalf of the ESOP as a whole pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

81.     Plaintiffs are adequate to bring this derivative action on behalf of the ESOP, and their interests are aligned with other participants and beneficiaries. Plaintiffs do not have any conflicts of interest with any participants or beneficiaries that would impair or impede their abilities to pursue this action. Plaintiffs have retained counsel experienced in ERISA litigation and intend to pursue this action vigorously on behalf of the ESOP.

## CLASS ACTION ALLEGATIONS

82.     Plaintiffs additionally and alternatively seek certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

83.     Plaintiffs asserts their claims on behalf of a class of participants and beneficiaries of the ESOP defined as follows:

> All participants and beneficiaries of Aerotech, Inc. Employee Stock Ownership Plan and Trust since the date that is six years prior to the filing of this action.

84.     Numerosity: The Class is so numerous that joinder of all Class members is impracticable. The ESOP had hundreds of participants during the relevant period.

85.     Typicality: Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs were ESOP participants and Plaintiffs suffered injuries as a result of Defendants' violations of ERISA. Defendants treated Plaintiffs consistently with other Class members with regard to the ESOP. Defendants' improper actions affected all ESOP participants similarly.

86.     Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and they have retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

20

87.     Commonality: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

      a.     Whether Defendants were fiduciaries with respect to the ESOP and the scope of their fiduciary duties;

      b.     Whether Defendants failed to comply with the ERISA fiduciary standards of prudence and loyalty in violation of 29 U.S.C. § 1104(a)(1);

      c.     Whether Defendants invested ESOP assets for the benefit the company, a party in interest the ESOP, in violation of 29 U.S.C. § 1106(a);

      d.     The proper form of equitable and injunctive relief; and

      e.     The proper measure of monetary relief.

88.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

89.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as disgorgement of proceeds of the prohibited transactions and allocation of the proceeds to participants, would be dispositive of the interests of all participants.

90.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this

21

Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

91.    Plaintiffs and their undersigned counsel will provide notice to the class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

**COUNT I**
**29 U.S.C. § 1104(a)(1)**

92.    Plaintiffs incorporate the foregoing paragraphs by reference.

93.    Defendant ESOT Committee is the ESOP fiduciary with discretion concerning how the ESOP assets contained within the OIA are invested.

94.    Defendant ESOT Committee violated ERISA fiduciary standards set forth in 29 U.S.C. § 1104(a)(1) by failing to prudently invest the OIA in a manner consistent with the investment objectives of the ESOP and its participants, and by allowing company interests to dictate its investment strategy.

95.    Defendant Aerotech violated ERISA fiduciary standards by failing to monitor the ESOT Committee's management of the Plan and failing to ensure that the ESOT Committee was investing the OIA with the care, skill, and diligence appropriate under the circumstances. Defendant Aerotech further failed to mandate compliance or remove fiduciaries when the ESOT Committee failed to abide by its fiduciary duties.

96.     Defendants' violations of 29 U.S.C. § 1104(a)(1) caused the ESOP injury in the form of lost investment earnings, and Defendants' deficient fiduciary conduct threatens future harm to the ESOP of the same character. These injuries to the ESOP adversely affected and continue to affect participants' ESOP accounts.

97.     Each Defendant is also liable for the fiduciary breaches of the other under 29 U.S.C. § 1105 as a co-fiduciary.

98.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3), Plaintiffs, the ESOP, and the Class are entitled to recover losses caused by Defendants' violations of 29 U.S.C. § 1104(a)(1) and other equitable and injunctive relief.

## COUNT II
## 29 U.S.C. § 1106(a)

99.     Plaintiffs incorporate the foregoing paragraphs by reference.

100.    Defendant ESOT Committee is the ESOP fiduciary with discretion concerning how the ESOP assets contained within the OIA are invested.

101.    Defendant Aerotech is a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(C) because its employees are the ESOP's participants.

102.    Defendant ESOT Committee violated 29 U.S.C. § 1106(a)(1)(D) by using OIA funds for the benefit of Aerotech by pursuing a principal preservation strategy for the OIA for the purpose of providing Aerotech security concerning its long-term liability to repurchase Aerotech stock from ESOP participants.

103.    Defendant ESOT Committee's violation of 29 U.S.C. § 1106(a) caused the ESOP injury in the form of lost investment earnings, and Defendant ESOT Committee's deficient fiduciary conduct threatens future harm to the ESOP of the same character. These injuries to the ESOP adversely affected and continue to affect participants' ESOP accounts.

23

104. Defendant Aerotech is liable for Defendant ESOT Committee's violations of Section 1106(a) as a co-fiduciary, pursuant to 29 U.S.C. § 1105, because Aerotech knew that the ESOT Committee was investing OIA funds for Aerotech's benefit and failed to intervene to ensure the ESOT Committee invested OIA funds exclusively for the benefit of ESOP participants.

105. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3), Plaintiffs, the ESOP, and the Class are entitled to recover losses caused by Defendants' violation of 29 U.S.C. § 1106(a) and other equitable and injunctive relief.

## PRAYER FOR RELIEF

106. Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A. Certify Plaintiffs' authority to seek plan-wide relief on behalf of the ESOP pursuant to 29 U.S.C. § 1132(a)(2);

B. Alternatively, certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify Plaintiffs as class representatives, and certify their counsel as class counsel;

C. Order Defendants to make good to the ESOP all losses resulting from their violations of ERISA;

D. Impose equitable and injunctive relief sufficient to protect ESOP participants, including changes to Defendants' investment process and/or appointment of independent investment advisors and managers;

E. Award Plaintiffs reasonable attorneys' fees and costs incurred pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

F. Award prejudgment and post-judgment interest; and

G. Award such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Dated: July 22, 2024

**ENGSTROM LEE LLC**
/s/Jennifer K. Lee
Jennifer K. Lee, MN Bar No. 399012^

24

Carl F. Engstrom, MN Bar No. 396298^
Nicholas D. Thompson, MN Bar No. 389609*
323 N. Washington Ave., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
jlee@engstromlee.com
cengstrom@engstromlee.com
nthompson@engstromlee.com

*Admitted to the bar of the U.S. District Court
for the Western District of Pennsylvania
^Admitted *Pro Hac Vice*

**ATTORNEYS FOR PLAINTIFFS**

25